IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DERA JACKSON,

      Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

      Defendant.

_____/

No. CIV S-06-1827 DAD

<u>ORDER</u>

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's motion is granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

Plaintiff Dera Jackson protectively filed an application for Social Security Disability Insurance benefits under Title II of the Social Security Act (Act) on June 10, 2004, alleging disability since February 9, 2004. (Transcript (Tr.) at 42-45.) The Commissioner denied the application initially and on reconsideration. (Tr. at 26-27.) Upon plaintiff's request for an

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

administrative hearing, a hearing was held before an Administrative Law Judge (ALJ) on October 11, 2005. (Tr. at 41, 190-208.) Plaintiff was represented by counsel and testified at the hearing. (Tr. at 193-203.)

In a decision dated April 26, 2006, the ALJ determined that plaintiff was not disabled. (Tr. at 9-21.) The ALJ entered the following findings in this regard:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 et seq.).

3. The claimant has the following severe impairment: asthma/chronic obstructive pulmonary disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant's residual functional capacity to perform work at all exertional levels is unlimited with the exception of some environmental limitations related to her asthma condition. Specifically, due to asthma, the claimant should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and the like. She has no other environmental limitations. Furthermore, there are no exertional, postural, manipulative, visual, or communicative limitations.

6. The claimant is capable of performing past relevant work as an assistant site supervisor in the childcare industry, and as a clerical worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from February 9, 2004 through the date of this decision (20 CFR 404.1520(f)).

(Tr. at 14-21.) On July 18, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 4-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 15, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, §§ 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

/////

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances two arguments in support of her motion for summary judgment: (1) the ALJ failed to properly consider the opinions of treating psychologist Angela Curiale, Ph.D. and treating psychiatrists at Fair Oaks Psychiatric Associates, instead favoring the opinion of a one-time consultative examiner, and (2) the ALJ rejected the treating psychologist's diagnosis in part because none of her notes were included in the file, but the ALJ did nothing to obtain those records. Plaintiff contends that if the ALJ had properly considered the opinions of her treating doctors, he would have determined that plaintiff is disabled. Both of plaintiff's arguments are addressed below.

**I. Whether the Opinions of Treating Doctors Were Properly Considered**

It is well established that the weight to be given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a

1 treating source than to the opinion of doctors who do not treat the claimant." Id.  This is so
2 because a treating doctor has a greater opportunity to know and observe the patient as an
3 individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  However, the ALJ need
4 not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel,
5 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.
6 1989).

"At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different, independent clinical findings, the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of either a treating or examining professional.  Lester, 81 F.3d at 831.

Here, plaintiff argues that the ALJ failed to take into account the opinions of her treating psychologist and treating psychiatrists and relied on the opinion of an examining psychiatrist who saw plaintiff once.  The undersigned finds that the record does not support plaintiff's argument.

Apparently, plaintiff was first diagnosed with emotional difficulties in 1996.  (Tr. at 122.)  When plaintiff applied for disability benefits in June 2004, alleging onset of disability on February 9, 2004, her primary care physician had been prescribing psychotropic medications for her for several years.  (Tr. at 15, 42, 127, 131-32, 163.)  In April 2004, plaintiff began seeing Angela Curiale, Ph.D. for therapy "because she was experiencing a great deal of work related

stress and felt unable to continue working." (Tr. at 137.) On July 28, 2004, Dr. Curiale prepared a letter regarding plaintiff's emotional and mental status. (Tr. at 136-38.) The letter includes Dr. Curiale's diagnosis and general conclusions regarding tests administered by the doctor. (Id.) Dr. Curiale found plaintiff unable to concentrate for long periods of time, anxious at even the simplest of directions, and unable to have sustained concentration or persistence. (Tr. at 137.) Dr. Curiale also found that plaintiff was very introverted and had problems relating to others. (Id.) Dr. Curiale diagnosed plaintiff as paranoid schizophrenic, with depression and generalized anxiety, and opined that plaintiff "is unable to work even on a part-time basis at this point in time." (Tr. at 138.) Dr. Curiale recommended that plaintiff "be considered for Social Security benefits" and reevaluated within two years. (Id.) The record does not contain any of Dr. Curiale's treatment records or any letter or report written by Dr. Curiale subsequent to July 2004. It appears that plaintiff continued to see Dr. Curiale until her insurance expired in 2005. (Tr. at 122.)

In June 2004, plaintiff's primary care physician referred her to Fair Oaks Psychiatric Associates for psychiatric evaluation.[2] (Tr. at 163.) Plaintiff was first seen by Fair Oaks staff on June 29, 2004. (Tr. at 163-64.) Plaintiff was diagnosed with major depression, recurrent, without psychosis; mood disorder; and rule out cannabinoid induced mood disorder. (Tr. at 163.) Effexor and Seroquel were prescribed. (Tr. at 164.) When plaintiff was seen on July 29, 2004, for her first follow-up appointment, she reported that the Seroquel had helped but she still had less than optimal sleep as well as episodes of agitation. (Tr. at 178.) She reported that she "liked" Seroquel and wanted to increase the dosage for better results. (Id.) On August 17, 2004, plaintiff reported that she felt better overall but was still having sleep problems; the

---

[2] Francisco J. Marasigan, M.D. had been plaintiff's primary care physician since 1985, treating her over the years for asthma, allergies, arthritis, neck pain, back pain, and chest pain. (Tr. at 74, 83, 85.) Dr. Marasigan had also treated plaintiff for depression, nerves, and emotional and mental stress. (Tr. at 83, 85.) Effexor was prescribed for her depression, and Lorazepam was prescribed for her nerves. (Tr. at 85.)

Seroquel dosage was increased. (Tr. at 162, 177.) On October 18, 2004, plaintiff was observed to be in no apparent distress, was alert and well organized, followed commands and answered questions appropriately, spoke in full sentences with no slurred speech, walked with a steady gait, displayed intact memory, both short term and long term, and had good eye contact. (Tr. at 161.) She was not agitated, depressed, manic, tearful, or withdrawn. (Id.) The primary diagnosis was major depression, recurrent, with a secondary diagnosis of insomnia. (Id.) Plaintiff's medications were continued. (Id.) Identical diagnoses and virtually identical observations were made on November 17, 2004, and December 16, 2004, with mood stability noted on the latter date. (Tr. at 175-76.) Treatment notes dated January 15, 2005, reflect that plaintiff felt depressed on that date, reported being afraid of going out because she had been assaulted in September 2004, and stated that she sometimes had auditory hallucinations and was "paranoid about people after her." (Tr. at 174.) No change in diagnosis was made, and the same medications were continued. (Id.) Treatment notes dated March 10, 2005, reflect that plaintiff was sleeping well and had a good appetite but continued to feel depressed; medications were continued. (Tr. at 174.) On June 9, 2005, plaintiff reported having had surgery on her right ankle, stated that she felt depressed, complained of visual hallucinations, and indicated that she was still "scared of going out." (Tr. at 173.) The psychiatrist diagnosed mood disorder not otherwise specified and increased the dosage of plaintiff's medications. (Id.) The administrative record does not include a formal report prepared by treating psychiatrists at Fair Oaks Psychiatric Associates.

    At the request of the agency, plaintiff was given a complete physical examination by J. Martin, M.D., a consultative examiner, on August 24, 2004 (tr. at 139-41), and a comprehensive psychiatric examination by Michael Joyce, M.D., a consultative psychiatrist, on September 1, 2004 (tr. at 142-46.) Dr. Martin found "no functional restrictions attributable to medical conditions," except that plaintiff "should be provided a work environment devoid of known bronchospastic agents" and should have ready access to inhalers. (Tr. at 141.) Dr. Joyce

7

diagnosed adjustment disorder with dysthymic features in partial remission on appropriate therapy, job related; history of cannabis abuse, still partially active; and a remote history of cocaine experimentation, reportedly in long-term remission. (Tr. at 145-46.) Based in part on a formal cognitive evaluation, which he found to be within normal limits in the context of plaintiff's education level, Dr. Joyce determined that plaintiff was able to follow simple and complex instructions, was able to maintain concentration and attention during the 27-minute interview, was apparently capable of maintaining attendance and performing within a schedule with punctuality and tolerance, was able to work in coordination with the physician without distractability, anxiety or somatic behavior, was apparently capable (with medication compliance) of completing a workday and workweek without interruption from symptoms arising from her job-related adjustment disorder, and was able to interact with others appropriately, ask simple questions, request assistance when needed, and adhere to socially appropriate behavior that does not distract others. (Tr. at 146.) In summary, Dr. Joyce found that plaintiff had some well-treated symptoms of her adjustment disorder and appeared "capable of responding appropriately to supervision, coworkers, or the usual work situation including changes in a routine setting." (Id.)

The ALJ's decision includes a detailed discussion of plaintiff's history of mental health problems. (See Tr. at 15-20.) The ALJ noted a discrepancy between the psychologist's diagnosis and the diagnoses of the treating and examining psychiatrists" but found that "the psychiatrists and the psychologist agree that depression is at least a component of the claimant's mental disorder." (Tr. at 15.) Finding "significant inconsistencies," the ALJ

> afforded significantly less weight to the report and conclusions of treating psychologist Angela Curiale, Ph.D. than to the psychiatric treatment records from Fair Oaks Psychiatric Associates and the report of consultative psychiatric examiner Michael Joyce, M.D. It should be noted that Dr. Curiale apparently diagnosed the claimant with paranoid schizophrenia based in large part on the claimant's self-report of auditory hallucinations, and paranoid ideations. In contrast, psychiatric treatment records show that the claimant did not make any report of hallucinations until June 9, 2005,

>approximately one year after psychiatric treatment began. Furthermore, these records make no further reference to hallucinations after June 9, 2005, and contain no indication whatsoever of paranoia. In addition, consultative psychiatric examiner Michael Joyce, M.D. noted in his September 1, 2004 report that the claimant had no psychotic symptoms. It should also be noted that in June 2004 the claimant readily admitted to her psychiatrist that she was smoking marijuana on an almost daily basis. Dr. Joyce also noted in his September 1, 2004 report that the claimant admitted to marijuana use. The claimant apparently did not disclose this information to Dr. Curiale, as there is no mention of her marijuana use in Dr. Curiale's report. Had Dr. Curiale been aware of the claimant's marijuana use, she may have attributed the alleged psychotic features (such as hallucinations and paranoia) to a condition such as cannabis psychosis rather than paranoid schizophrenia.
>
>The psychiatric treatment records indicate diagnoses of recurrent major depressive disorder without psychotic features, mood disorder not otherwise specified, and rule out cannabinoids induced mood disorder. Although there has been some adjustment in dosage, the claimant's psychotropic medications have always consisted of Effexor and Seroquel. Treatment records indicate that medication effectiveness is mixed; however, the claimant tolerates the medications well and she has reported no adverse effects. Consultative psychiatric examiner Michael Joyce, M.D. diagnosed the claimant with adjustment disorder with dysthymic features in partial remission on appropriate therapy and history of cannabis abuse, still partially active. Dr. Joyce rated the claimant's global assessment of functioning (GAF) at 65 - 75. A GAF of 65 is indicative of an individual who has no more than mild symptoms or some difficulty in social, occupational, or school functioning, but who generally functions pretty well and has some meaningful interpersonal relationships. A GAF of 75 is indicative of an individual who, if symptoms are present, experiences transient and expectable reactions to psychosocial stressors and no more than slight impairment in social, occupational, or school functioning. Dr. Joyce's assessment is consistent with the psychiatric treatment record.

(Tr. at 15-16.) The ALJ determined that, although plaintiff's mental impairment is severe, it does not meet or equal the requirements of any listed impairment. (Tr. at 16-17.)

Turning to plaintiff's residual functional capacity, the ALJ determined that plaintiff has an unlimited residual functional capacity to perform work at all exertional levels, with environmental limitations related to her asthma. (Tr. at 18.) With regard to non-exertional limitations, the ALJ addressed the opinion evidence at length.

> [T]he undersigned has rejected the opinion rendered by Angela Curiale, Ph.D. primarily because it is not supported by the psychiatric treatment record, the report of the consultative psychiatrist, or the record as a whole. As discussed elsewhere in this decision, Dr. Curiale's diagnosis is inconsistent with the diagnoses indicated by the treating psychiatrist and the examining psychiatrist. It is further noted that Dr. Curiale's report and opinion is not accompanied by any treatment records or notes. Moreover, at the time this opinion was rendered, the claimant had been in treatment with Dr. Curiale no longer than four months. In contrast, records from Fair Oaks Psychiatric Associates reflect a significantly longer treatment history of approximately twelve months. Given the aforementioned disparity in treatment history as well as diagnosis, the psychiatric treatment records are considered to more accurately reflect the claimant's overall mental condition and related limitations than the report and opinion of Dr. Curiale. It would appear that Dr. Curiale relied quite heavily on the subjective report of symptoms and limitations provided by the claimant yet, as explained elsewhere in this decision there exist good reasons for questioning the reliability of the claimant's subjective complaints. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. In light of the foregoing, the undersigned rejects the opinion rendered by Dr. Curiale.
>
> The undersigned has afforded significant weight to the opinions rendered by examining physicians J. Martin, M.D. and Michael Joyce, M.D. as they are well-supported by the objective evidence as well as the other substantial evidence of record. The opinions rendered by Dr. Martin and Dr. Joyce support a finding of "not disabled". The residual functional capacity conclusions reached by the State Disability Determination Services also support a finding of ["]not disabled". Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions as explained throughout this decision.

(Tr. at 20.)

/////

It is evident to the undersigned that the ALJ gave careful consideration to the diagnosis of treating psychologist Dr. Curiale and found the diagnosis of paranoid schizophrenia inconsistent with every diagnosis made by plaintiff's treating psychiatrists at Fair Oaks Psychiatric Associates and with the diagnosis made by examining psychiatrist Dr. Joyce. This is not a case in which the ALJ disregarded the uncontradicted and unanimous opinions of treating psychologists and psychiatrists in favor of an inconsistent opinion by an examining psychiatrist. In addition, Dr. Curiale's opinion was rendered after less than four months of treatment for a disability alleged to have commenced in February 2004, while Dr. Joyce's subsequent diagnosis of adjustment disorder in partial remission on appropriate therapy is consistent with the steady improvement reflected in the psychiatric treatment records.

The ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the treating psychologist's diagnosis in part and for giving little evidentiary weight to her opinion. See Meanel, 172 F.3d at 1113-14; Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751. Moreover, the ALJ was entitled to resolve the conflict between the treating psychologist's opinion, on the one hand, and the treating and examining psychiatrists' opinions, on the other. See Andrews, 53 F.3d at 1041. Plaintiff's arguments to the contrary are unpersuasive.

## II. Development of the Record

The ALJ has a duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). See 20 C.F.R. §§ 416.912(e) & 416.1444. However, the ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)

Here, plaintiff's claim arises from the ALJ's observation that Dr. Curiale's report and opinion was not accompanied by any treatment records or notes. (Tr. at 20.) Plaintiff

interprets the observation as a finding that the record was incomplete. On this foundation, plaintiff argues that the ALJ should have subpoenaed Dr. Curiale's treatment records and notes, or ordered further examination and testing.

The observation regarding Dr. Curiale's treatment records and notes was made in the context of the ALJ's extensive discussion of the opinion evidence. That discussion is set forth in full in this order <u>supra</u>. The ALJ rejected Dr. Curiale's opinion "because it is not supported by the psychiatric treatment record, the report of the consultative psychiatrist, or the record as a whole." (Tr. at 20.) The ALJ cited his earlier discussion of the ways in which Dr. Curiale's diagnosis was inconsistent with the diagnoses of the treating and examining psychiatrists and then noted that Dr. Curiale's report and opinion was not accompanied by any treatment records or notes. He observed that when the opinion was rendered, plaintiff had been in treatment with Dr. Curiale for four months, at most, while records from Fair Oaks Psychiatric Associates reflected a treatment history of approximately twelve months. He concluded that the psychiatric treatment records were more likely to reflect plaintiff's overall mental condition and limitations than Dr. Curiale's report and opinion did. The ALJ speculated that Dr. Curiale may have relied heavily on plaintiff's subjective reports of symptoms and limitations. (<u>Id.</u>)

The undersigned does not view the ALJ's observation as anything other than a factual statement about "the record as a whole" and support for the ALJ's conclusion that Dr. Curiale's opinion was inconsistent with the record. Plaintiff's assertion that the observation was sufficient to trigger an obligation on the part of the ALJ to subpoena records or order further examinations is unpersuasive. In the absence of any ambiguity in Dr. Curiale's report itself, the ALJ was not required to develop the issue further. See <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (ambiguous evidence or the ALJ's own finding that the record is inadequate to allow proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry). The evidence of record was sufficient to support the ALJ's findings, and there was no need to further develop the record. See <u>Mayes</u>, 276 F.3d at 459-60.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Defendant's cross-motion for summary judgment is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: December 12, 2008.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/jackson1827.ord